UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALEXANDER BABAITSEV,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | NO. C13-1275-BJR-JPD<br><br><br>REPORT AND RECOMMENDATION |

Plaintiff Alexander Babaitsev appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and this matter be REMANDED.

I.     FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a 55 year old man with a college degree from a university in Russia. Administrative Record ("AR") at 34, 146. His past work experience includes employment as a survey worker, outside deliverer, and general clerk. AR at 22, 31-34. Plaintiff was last gainfully employed in 2007. AR at 134.

REPORT AND RECOMMENDATION - 1

On September 2, 2010, plaintiff filed an application for DIB, alleging an onset date of August 15, 2007. AR at 98-99. Plaintiff asserts that he is disabled due to low back and neck injuries. AR at 110.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 45-46. Plaintiff requested a hearing which took place on January 10, 2012. AR at 27-44. On February 10, 2012, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 13-26. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On July 19, 2013, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 1.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*,

REPORT AND RECOMMENDATION - 2

53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Mr. Babaitsev bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999)  (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the

national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V.   DECISION BELOW

On February 10, 2012, the ALJ issued a decision finding the following:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2007.

2. The claimant did not engaged in substantial gainful activity during the period from his alleged onset date of August 15, 2007 through his date last insured of December 31, 2007.

3. Through the date last insured, the claimant had the following severe combination of impairments: cervical, thoracic, and lumbar degenerative disc disease.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b).

6. Through the date last insured, the claimant was capable of performing past relevant work as a survey worker, an outside deliverer, a general clerk, and a consultant. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from August 15, 2007, the alleged onset date, through December 31, 2007, the date last insured.

AR at 18-22.

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1.   Whether the ALJ erred is assessing plaintiff's credibility.

2.   Whether the ALJ erred in assessing the medical evidence.

3.   Whether the ALJ erred in determining whether plaintiff was able to perform past relevant work.

Dkt. No. 17 at 2, 14.

## VII.   DISCUSSION

A.   <u>The ALJ erred in assessing plaintiff's credibility</u>

As noted above, credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; Social Security Ruling ("SSR") 96-7p. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general

REPORT AND RECOMMENDATION - 6

findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Plaintiff injured his back while at work in February 2007, and then was in a car accident that August. AR at 33. At the hearing, he testified that he is limited by neck and back pain. AR at 35. He reported that he can sit for 30-40 minutes before needing to change positions, walk for 15-20 minutes at a time, and drive for no more than 30-40 minutes. AR at 38-39, 119. He also reported that he has difficulty picking objects up off the floor and needs help getting dressed. AR at 42, 119. He testified that he has difficulty sleeping and that his pain medication provides him some relief but makes it difficult for him to concentrate. AR at 35-36. He also testified that he used a cane after the 2007 car accident for about eight months due to right leg weakness. AR at 41.

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, however his statements concerning the intensity, persistence, and limiting effects of his symptoms were not fully credible. AR at 19. The ALJ discounted the credibility of plaintiff's statements because his alleged limitations were inconsistent with his activities of daily living and the medical evidence of record. AR at 19-21. Plaintiff challenges the ALJ's adverse credibility determination.

### 1. *Activities of daily living*

An ALJ may discount a claimant's credibility when his level of activity is inconsistent with his alleged limitations. *Reddick*, 157 F.3d at 722 ("Only if the level of activity were

REPORT AND RECOMMENDATION - 7

1  inconsistent with Claimant's claimed limitations would these activities have any bearing on
2  Claimant's credibility."). Here, the ALJ found that plaintiff's activities were consistent with a
3  RFC for light work because he did light exercises regularly and "was independent in activities
4  of daily living as to washing, fixing meals, climbing stairs, and walking." AR at 21. This
5  finding is insufficient to discount plaintiff's credibility because none of the activities cited by
6  the ALJ are inconsistent with plaintiff's alleged limitations. For example, plaintiff indicated
7  that he makes meals that can be prepared in 10-15 minutes, AR at 120, which is consistent with
8  his claim that he can only stand for 15-20 minutes at a time. There is no indication in the
9  record that plaintiff climbs stairs or walks for more than 15-20 minutes at a time. Furthermore,
10 the fact that plaintiff does light exercises is not grounds to find him less than fully credible.
11 *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly
12 asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery
13 shopping, driving a car, or limited walking for exercise, does not in any way detract from her
14 credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order
15 to be disabled.") (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).). As such, the
16 ALJ's first reason for discounting plaintiff's credibility is not supported by substantial
17 evidence.

18                    *2.    Medical evidence*

19 In considering a plaintiff's subjective pain testimony, "once the claimant produces
20 objective medical evidence of an underlying impairment, an adjudicator may not reject a
21 claimant's subjective complaints based solely on a lack of objective medical evidence to fully
22 corroborate the alleged severity of pain." *Bunnell*, 947 F.2d 345. The medical evidence,
23 however, is "still a relevant factor in determining the severity of the claimant's pain and its
24 disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Here, plaintiff

produced medical evidence of his degenerative disc disease of the spine. *See* AR at 256-59 (MRIs of plaintiff's spine), 457-58 (diagnosis of degenerative disc disease with discogenic pain). Thus even assuming the medical evidence did not fully corroborate plaintiff's alleged limitations due to pain, that reason alone is insufficient to support the ALJ's adverse credibility finding. As just discussed, the ALJ's only other reason for finding plaintiff less than fully credible—his activities of daily living—is not supported by substantial evidence. Consequently, the ALJ's ultimate credibility finding is not supported by substantial evidence either.

The ALJ's failure to provide clear and convincing reasons supported by substantial evidence to discount plaintiff's credibility was harmful error because plaintiff testified to limitations that were not included in the RFC. *See* SSR 96-8p (RFC is the most a claimant can do considering his or her limitations or restrictions); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (error is harmful when it is of consequence to the ultimate nondisability determination). On remand, the ALJ should reassess the credibility of plaintiff's statements concerning the limiting effects of pain. The Court also notes that the ALJ rejected some of the opinions of state reviewing doctor Robert Hander, M.D., because they were based on plaintiff's subjective complaints. *See* AR at 21. Given that the ALJ's adverse credibility finding was erroneous, the ALJ should also reconsider Dr. Hander's opinions. After reassessing plaintiff's statements and Dr. Hander's opinions, the ALJ should assess plaintiff's RFC anew and proceed with step four and, as necessary, step five of the sequential evaluation.

B.  The ALJ erred in assessing the medical evidence

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751;

*see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick*, 157 F.3d at 725. "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss*, 427 F.3d at 1216.

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. SSR 96-6p. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute

substantial evidence if it is consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

Plaintiff challenges the ALJ's treatment of the opinions of treating physicians Igor Uritskiy, M.D., Alan Brown, M.D., Tatyana Kutsy, M.D., and Charles Chabal, M.D.

### 1. Dr. Uritskiy

Dr. Uritskiy began treating plaintiff in 2011, well after the date last insured of December 31, 2007. *See* AR at 556-574. On January 5, 2012, he opined that plaintiff had multiple physical limitations, including an inability to sit, stand, and walk for a total of eight hours in an eight hour work day. AR at 605-10. He opined that these limitations were first present in 2007. AR at 610. The ALJ did not mention Dr. Uritskiy's opinion in his decision.

"The ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cri. 2008); *see also* 20 C.F.R. §§ 404.1457(c), 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p. Furthermore, as stated by the Ninth Circuit, "We think it is clear that reports containing observations made after the period for disability are relevant to assess the claimant's disability. It is obvious that medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) (internal citations omitted); *see also* SSR 83-20 ("In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working.").

The ALJ here erred in failing to consider Dr. Uritskiy's opinion. Although Dr. Uritskiy did not render his opinion until several years after plaintiff's date last insured, he expressly

REPORT AND RECOMMENDATION - 11

opined that plaintiff's limitations were first present in 2007. Given that his opinion was rendered retrospectively, it is relevant to the determination of whether plaintiff was disabled prior to his date last insured. *See Smith*, 849 F.2d at 1255-56; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1034 n.3 (9th Cir. 2007). This error was harmful because Dr. Uritskiy opined plaintiff was more limited than the RFC. *See* SSR 96-8p (RFC is the most a claimant can do considering his or her limitations or restrictions); *Molina*, 674 F.3d at 1115 (error is harmful when it is of consequence to the ultimate nondisability determination). On remand, the ALJ should consider Dr. Uritskiy's opinion and, as necessary, revise plaintiff's RFC and proceed with steps four and five of the sequential evaluation process.

### 2. Dr. Brown

The record contains several treatment notes from Dr. Brown rendered between May and October 2007. He diagnosed plaintiff with degenerative disc disease with discogenic pain. AR at 475-76. A May 2007 physical evaluation established that plaintiff had 50% flexion with pain, 100% extension with pain, normal heel and toe raising, normal muscle strength, and no point tenderness. AR at 475. Dr. Brown's remaining treatment notes indicate plaintiff complained of back pain, the pain persisted and at times increased despite narcotic pain medication, an epidural injection provided only temporary relief, and physical therapy and chiropractic manipulations did not help. AR at 475-76, 489, 503, 505, 507, 510. The ALJ found that Dr. Brown's examination findings did not support a RFC that was limited to less than light work. *See* AR at 20.

Plaintiff asserts that the ALJ "barely mentions" Dr. Brown's opinions. Dkt. No. 17 at 11. As just noted, however, the ALJ did consider Dr. Brown's examination findings. AR at 20. Plaintiff's assertion is insufficient to establish that the ALJ's assessment of Dr. Brown's examination findings was unreasonable. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169

F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (citing *Andrews*, 53 F.3d at 1041); *see also Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) ("The ALJ is responsible for resolving conflicts in the medical record."). Moreover, Dr. Brown offered no opinion concerning plaintiff's functional capacity, and therefore the ALJ was not required to provide any additional discussion of Dr. Brown's treatment notes. *See* 20 C.F.R. § 416.927(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."); *Turner*, 613 F.3d at 1223 (where physician's report did not assign any specific limitations or opinions in relation to an ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions"). Thus plaintiff has not established error in the ALJ's consideration of Dr. Brown's treatment notes.

### 3. Dr. Kutsy and Dr. Chabal

Dr. Kutsy and Dr. Chabal completed several forms indicating that plaintiff should be released from work.[2] AR at 499, 504, 523, 529, 533. The ALJ gave no weight to these forms because the issue of an individual's ability to work is reserved for the Commissioner and

---

[2] The record also contains treatment notes from Dr. Kutsy and Dr. Chabal, as well as a physical capacity form completed by Dr. Kutsy, which the ALJ rejected because it was inconsistent with the objective medical evidence. AR at 21, 484. In challenging the ALJ's treatment of this evidence, plaintiff asserts without additional discussion or explanation, "The ALJ did not provide legally sufficient reasons to give 'no weight' to the rest of these attending providers' opinions about the condition of Mr. Babaitsev." Dkt. No. 17 at 12. Because plaintiff's assertion is not argued with any specificity, the Court declines to address it. *See, e.g.*, *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (declining to address assertions unaccompanied by legal arguments).

REPORT AND RECOMMENDATION - 13

because the opinion that plaintiff could not work was inconsistent with the medical record. AR at 21.

Under the regulations, a treating physician's opinion regarding the ultimate issue of disability is not entitled to any special weight. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also* 20 C.F.R. § 404.1527(e); SSR 96-5p (providing that medical source opinions about whether an individual who has applied for disability is "disabled" or "unable to work," "can never be entitled to controlling weight or given special significance"). The ALJ, therefore, could properly reject opinions as to whether plaintiff was disabled or unable to work. Furthermore, the ALJ is responsible for resolving conflicts in the medical record, *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008), and when evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ, *Tackett*, 180 F.3d at 1098. In this case, the Court cannot say the ALJ was unreasonable in finding that the doctors' opinions were inconsistent with the medical evidence. Thus plaintiff has not shown the ALJ erred in his consideration of Dr. Kutsy's and Dr. Chabal's opinions.

C. <u>The Court need not resolve plaintiff's remaining arguments</u>

Plaintiff contends the ALJ made multiple additional errors in finding that he was able to perform his past relevant work. The Court, however, need not address these issues at this time because the case is being remanded so that the ALJ can assess plaintiff's RFC anew after reconsidering plaintiff's credibility and the medical evidence.

D. <u>This case should be remanded for further proceedings</u>

Plaintiff asks the Court to remand for an immediate award of benefits. The Court has discretion to remand for further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). As noted above, the Court may direct an award of benefits

REPORT AND RECOMMENDATION - 14

where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey*, 298 F.3d at 1076.  Here, the Court finds that there are outstanding issues that must be resolved, namely reweighing and resolving the inconsistencies in the medical opinion evidence.  Accordingly, the Court declines to remand for an award of benefits and instead remands for further proceedings.

## VIII.  CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **May 9, 2014**.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **May 16, 2014**.

DATED this 25th day of April, 2014.

*James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 15